COVE INVESTMENTS, INC., Appellant,

v.

Clinton MANGES et al., Appellees.

No. 16050.

Court of Civil Appeals of Texas,
San Antonio.

June 13, 1979.

Rehearing Denied Sept. 25, 1979.

Garland F. Smith, Smith, McIlheran, Lauderdale & Jones, Weslaco, for appellant.

Rufus Wallingford, Fulbright & Jaworski, Houston, for appellees.

## OPINION

CADENA, Chief Justice.

Appellant, Cove Investments, Inc., a Texas Corporation whose entire stock is owned by Vannie E. Cook, Jr., appeals from a judgment denying its motion for summary judgment and granting the motions for summary judgment filed by appellees, Clinton Manges, Helen Ruth Manges, Duval County Ranch Company and the Bank of the Southwest National Association. Cove Investments, Inc., will be referred to in this opinion as "Cove".

The transcript in this case contains more than 1,200 pages and the litigation involves various parties and several suits, some of which are still pending in the trial court. Much of the material contained in the tran-

script is irrelevant to this appeal and could well have been omitted. For the purpose of this appeal, the result of the judgment below is that Cove take nothing by its suit which sought recovery of mineral interests in certain lands.

The controversy originated in a suit filed in Starr County by Ruben Guerra complaining of Manges' refusal to execute oil and gas leases on certain lands in Starr and Jim Hogg counties in which Guerra and Manges owned undivided interests and as to which Manges held the executive rights. Shortly after this suit was filed, J. C. Guerra filed a similar suit, involving the same lands, in Jim Hogg County. The Jim Hogg suit also named the Bank as a defendant. Guerra's pleading in this second case alleged that Bank held a lien on the executive rights held by Manges.

Cove intervened in the Starr County suit, alleging that it owned the mineral interests in all of the lands involved in the two suits. Both suits proceeded independently of each other until the trial court in this case granted the summary judgment in favor of appellees and entered severance orders thus rendering the judgment from which Cove appeals a final judgment for the purpose of appeal.

The facts relevant to this appeal may be summarized as follows:

1. In December, 1968, Manges was attempting to purchase certain lands from the V. C. Guerra estate (identified in this opinion as the VCG lands) and from the M. Guerra & Sons partnership (identified in this opinion as the MGS lands). The M. Guerra & Sons partnership was in receivership at that time.

2. The money with which Manges proposed to purchase the lands was borrowed by him from Cook. The oral agreement between Cook and Manges, in addition to requiring repayment of the money advanced by Cook ($2,000,000.00), provided that when Manges acquired the lands in question Cook would have an option to purchase one-half of the lands and mineral interests acquired by Manges.

3. On December 10, 1968, Manges executed and delivered to Cove, Cook's nominee, two mineral deeds. One of these deeds conveys to Cove the mineral interest in the MGS lands, while the other is a conveyance of the mineral interest in the VCG lands. Although both deeds are in the form of an absolute conveyance, it is undisputed that the deeds were executed and delivered as a guarantee of Manges' good faith in carrying out his agreement with Cook. These deeds were not recorded until August, 1975.

4. In February, 1971, Manges received a deed, executed by the receiver of the M. Guerra & Sons partnership, conveying to Manges about 40,000 acres of MGS lands, including one-half of the mineral rights as well as the executive rights to the entire mineral interest.

5. Manges and Cook orally agreed, on or about February 25, 1971, that Cove was to receive, in lieu of the 1968 mineral deeds, the surface estate in 27,000 acres of MGS land and one-half of all the mineral interests which Manges might acquire in the MGS and VCG lands. At this time Manges executed and delivered to Cove a deed conveying the surface interest in 27,000 acres of MGS land.

6. On March 18, 1971, Manges executed and delivered to Cove's trustee a deed purporting to transfer a one-half mineral interest in the MGS lands. This deed was returned to Manges for correction, since it should have conveyed one-half of the mineral interest acquired by Manges in both the MGS and VCG lands, rather than all the mineral interest which Manges had acquired in the MGS lands.

7. Manges refused to execute and deliver a corrected deed, and in August, 1975, Cove filed the 1968 deeds with the county clerk.

By its pleadings Cove sought judgment (1) awarding it title to and possession of the entire mineral interest in the MGS and VCG "lands, plus executive rights to lease the entire minerals of said lands, to the extent same were acquired by . . . Manges,"; or (2) awarding it title to and possession of such mineral and executive

rights, with a constructive trust in favor of Manges "for a beneficial interest in one-half of said minerals"; or (3) declaring, should the court determine that Manges is the owner of such mineral and executive rights, that Manges holds such rights "subject to a constructive trust in favor of . . Cove, for a beneficial interest in one-half of said minerals."

It is clear that Cove's claim is based on the two mineral deeds executed by Manges in 1968. Cove's principal contention is that the 1968 deeds, being absolute in form, must be given effect and that the parol evidence as to their intended effect must be disregarded. Cove relies on the well-settled rule which forbids the introduction of parol evidence of contemporaneous agreements to vary the import of a deed. *See Denman v. Hall*, 144 Tex. 633, 193 S.W.2d 515 (1946). But it is equally well-settled that parol evidence is admissible to show that a grantor did not intend that a deed operate as a present conveyance of title. *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex.1974). This latter rule finds frequent application in cases where a deed absolute on its face was intended to operate only as security for the performance of an obligation by the grantor. In such cases, extrinsic or parol evidence is admissible to show that what purports to be an absolute conveyance was intended only as a security arrangement. *Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962). In this case it is undisputed that the two 1968 mineral deeds were executed by Manges and delivered to Cove merely to secure performance by Manges of the obligations incurred by him under the oral agreement. Under these circumstances, the two 1968 instruments cannot be given effect as conveyances of the mineral estates described in such deeds.

Nor can Cove rely on the oral option agreement of 1968 or on the "settlement agreement" entered into orally in 1971. Neither of these agreements can be enforced in the face of the statute of frauds. Article 1288, Tex.Rev.Civ.Stat. Ann. (Vernon 1962); *See also* Tex.Bus. & Com.Code Ann. § 26.01 (Vernon Supp.1978–1979). This statute prevents enforcement of an oral option to purchase land. *See Michael v. Busby*, 139 Tex. 278, 162 S.W.2d 662 (1942); 26 Tex.Jur.2d *Frauds, Statute of* § 71 (1961).

Cove's tenth point complains of the granting of summary judgment in favor of Manges "during a period of time when discovery was denied to Cove." All of Cove's ten points are grouped together for the purpose of argument, and we find no portion of the brief which can be considered as a briefing of the tenth point. In any event, the brief does not reflect that this obstacle to the rendition of summary judgment, if obstacle it was, was called to the attention of the trial court.

The judgment of the trial court is affirmed.