Manu PATEL d/b/a Nu–Tone Cleaners
of Abilene, Appellant,

v.

AMBASSADOR DRYCLEANING
& LAUNDRY CO., INC., et
al, Appellees.

No. 11–01–00175–CV.

Court of Appeals of Texas,
Eastland.

Aug. 15, 2002.

Jack Yates, Abilene, Stuart Evan Glass, Weiner, Glass & Reed, P.C., Dallas, for appellant.

Stephen H. Suttle, McMahon, Surovik, Suttle, Buhrmann, Hicks & Gill, Abilene, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT and McCALL, JJ.

### Opinion

JIM R. WRIGHT, Justice.

This case involves a settlement agreement and the issues of whether appellees are entitled to enforce the agreement, whether appellees breached the agreement, and whether appellees fraudulently induced appellant to enter into the agreement. Because it found that appellees had not breached the agreement, that appellees had substantially performed under the agreement, and that there had been no fraud in connection with the agreement, the trial court entered a take-nothing judgment against appellant and dismissed appellant's lawsuit. We affirm in part and reverse and remand in part.

Appellant is in the dry-cleaning business. In 1996, he purchased a Technodry dry-cleaning machine. Appellees were involved in various capacities in providing appellant with the machine. Appellant experienced problems with the machine, and he rejected it. When appellees did not remove the machine and return his money, appellant placed the machine in storage

and filed suit against appellees. The parties mediated their claims and entered into a settlement agreement, followed by a letter clarifying the settlement agreement.

Appellant filed a second amended original petition alleging that appellees had breached the settlement agreement and that they had fraudulently induced him to enter into the settlement agreement. Appellees filed a counterclaim in which they sought to enforce the settlement agreement and to have the original cause of action dismissed because they had substantially performed under the settlement agreement. It is not the sale that is involved in this appeal, it is the settlement agreement. Following a bench trial, the trial court concluded that the settlement agreement was valid and binding, that appellees substantially complied with all material terms under the settlement agreement, that appellees committed no breach of the settlement agreement, that appellees had not committed fraud, that appellees made no misrepresentations in connection with the execution of the settlement agreement, and that appellant's claims should be denied and his lawsuit dismissed.

Appellant brings three points of error. In his first point, appellant argues that the trial court erred in finding that appellees substantially complied with the settlement agreement because: the doctrine of substantial performance cannot be applied where there is a breach of an essential part of a contract; the doctrine of substantial performance cannot be applied in this instance because the trial court found that appellees had not breached the agreement; the doctrine of substantial performance cannot be applied to settlement agreements as a matter of law; and there was insufficient evidence of substantial performance. In his second point, appellant maintains that the evidence was insuffi-cient to support the trial court's finding that appellees did not breach the settlement agreement. In his third point, appellant argues that the trial court's failure to find in his favor on the fraudulent inducement issue was so against the great weight and preponderance of the evidence as to be manifestly unjust.

We will first discuss that portion of his first point in which appellant maintains that the doctrine of substantial performance does not apply to settlement agreements as a matter of law. Settlement agreements are enforceable in the same manner as other contracts. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (Vernon 1997); see also *Stevens v. Snyder*, 874 S.W.2d 241, 244 (Tex. App.-Dallas 1994, writ den'd). The doctrine of substantial performance is a contract law concept which is applicable to many different types of contracts. See, e.g., *Geotech Energy Corporation v. Gulf States Telecommunications and Information Systems, Inc.*, 788 S.W.2d 386, 390 (Tex.App.-Houston [14th Dist.] 1990, no writ). The strict rule formerly was that one who is in default cannot maintain a suit for its breach. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.1990); *Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065, 1068 (1940). This rule was later relaxed by the doctrine of substantial performance. The rule of substantial performance allows one to go forward with a contract action even though he has breached nonmaterial terms of the contract but has substantially performed it. *Dobbins v. Redden*, supra; *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480 (Tex.1984); *Atkinson v. Jackson Bros.*, 270 S.W. 848, 850 (Tex. Comm'n App.1925, holding approved). We see no reason why settlement agreements should be treated differently from other contracts to which the doctrine applies. We hold

that the doctrine of substantial performance is applicable to settlement agreements. That portion of appellant's first point in which he argues to the contrary is overruled.

Appellant also argues in his first point that the doctrine of substantial performance applies only where there is a breach of the underlying agreement. He reasons that, because the trial court found that appellees did not breach the agreement, it could not also find that they have substantially performed the agreement. While we agree with appellant that, by its very definition, the doctrine of substantial performance assumes an immaterial breach by the one seeking to recover under the doctrine, in view of our disposition of other points on appeal, we need not discuss this portion of appellant's first point. See *Ambassador Development Corporation v. Valdez*, 791 S.W.2d 612 (Tex.App.-Fort Worth 1990, no writ).

We next discuss that portion of his first point in which appellant maintains that the trial court erred in finding that appellees substantially performed under the agreement because there is insufficient evidence to support such a finding.

 "Substantial performance" means:

[T]hat there has been no willful departure from the terms of the agreement and no omission in essential points and that the agreement has been honestly and faithfully performed in its material and substantial particulars and the only variance from the strict and literal performance consists of technical or unimportant omissions or details.

*Balcones Corporation v. Sutherland*, 318 S.W.2d 691, 694 (Tex.Civ.App.-San Antonio 1958, writ ref'd n.r.e.).

The settlement agreement set forth the obligations of all three appellees to be: to deliver a new dry-cleaning machine and spill tank to appellant by a certain date; to install that machine; to deliver a written warranty covering all parts for one year; to deliver an owner's operating manual in English with the delivery of the machine; to deliver a list of parts and suppliers of parts for the machines in the English language within 60 days after the delivery of the machine; to provide telephone numbers where parts for the machine can be ordered for delivery by Federal Express or UPS; to provide 3 continuous days of training in the operation of the machine after installation; and to pay to appellant the sum of $14,000 within 10 days from the date of the settlement agreement.

The settlement agreement and clarification letter also set forth appellant's obligations: to obtain delivery of 80 gallons of new solvent upon installation of the new machine; to attend the training sessions to be given by appellees; to furnish an unobstructed location upon which to install the new machine; to remove the old machine from storage; to drain the solvent from the old machine; and to keep the settlement agreement confidential.

 Appellant did not have the burden of proof upon the issue of substantial performance. In a contract action based upon substantial performance, the party seeking relief under the doctrine bears the burden of proving that he did substantially perform in accordance with the agreement. *Vance v. My Apartment Steak House of San Antonio, Inc.*, supra. Therefore, appellees bore the burden of proving that they substantially performed under the settlement agreement. In reviewing this issue, we must examine all of the evidence and make a determination as to whether the evidence in support of the finding is so weak as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We

review the trial court's findings of fact following a bench trial using the same standards we use to review the factual sufficiency of the evidence supporting a jury's verdict. *Hitzelberger v. Samedan Oil Corporation,* 948 S.W.2d 497, 503 (Tex. App.-Waco 1997, writ den'd). Regardless of the label, conclusions which are actually findings will be treated as findings. *Ray v. Farmers' State Bank of Hart,* 576 S.W.2d 607 (Tex.1979). As the trier of fact in a bench trial, it is the province of the trial court to determine the credibility of the witnesses and the weight to be given their testimony, to believe or disbelieve all or any part of the testimony, and to resolve any inconsistencies in the testimony. *Robbins v. Roberts,* 833 S.W.2d 619, 624 (Tex.App.-Amarillo 1992, no writ). When there is conflicting evidence, the appellate court usually regards the finding of the trier of fact as conclusive. See *Jauregui v. Jones,* 695 S.W.2d 258, 263 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). We are not to reweigh the evidence and set aside the finding merely because we are of the opinion that a different result is more reasonable. *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986).

We have examined all of the evidence in this record. The following facts are supported by the evidence: appellees performed the terms of the settlement agreement pertaining to the delivery and installation of the machine; although not timely, appellees made the $14,000 payment to appellant, which appellant accepted; appellees delivered an owner's manual to appellant, as appellant admitted at trial; appellees provided the three-day training program called for in the agreement; and, although appellant disagrees, appellees provided the telephone numbers required by the agreement. We are left with questions concerning the written warranty and the parts list which appellees were required to furnish pursuant to the agreement.

Charles Gelfand owns Ambassador Drycleaning. Gelfand testified that everyone who gets a new dry-cleaning machine gets a written warranty and that appellant received one with the first machine. He further testified that he did not know if he delivered a written warranty with the settlement agreement machine or not. When presented at trial with a copy of the warranty furnished with the first machine, Gelfand stated that it was like one that appellant should have received with the second machine. Appellant denied receiving a written warranty on the second machine as required by the settlement agreement. Gelfand's response was that the written warranty provided for the first machine is also valid for the second machine. He also testified that the settlement agreement itself was the warranty. Paragraph 4(a)(iii) of the agreement, which Gelfand signed as president of Ambassador Drycleaning, as "legal representative" for Technodry, and individually, requires appellees "to deliver a written warranty covering all parts on the TEC–35 for a period of one year to Manu Patel."

We have examined the evidence regarding the warranty given on the first machine. Appellant argues that, even if an identical copy of that warranty had been given to appellant with the delivery of the second machine, it did not cover *all* parts for a period of one year as required by the settlement agreement. That warranty covered electrical components for 90 days only, excluded certain other parts, and also excluded parts not manufactured by Techno–Stir (Italian translation for "Technodry"). Further, if the original warranty were to apply to the second machine or if the settlement agreement itself were the actual written warranty required by the

agreement, as contended by appellees, then there was no need for appellees to agree to furnish a warranty in the future. The warranty was to be furnished with the second machine. Delivery of the warranty was a material term of the settlement agreement. Even if there is more than a scintilla of evidence regarding delivery of the warranty, we hold that the evidence in support of the finding that appellees substantially performed the settlement agreement is so weak as to be manifestly unjust.

Appellees called witnesses who were also in the dry-cleaning business. These witnesses had purchased Technodry machines and had no or minimal problems with the machines. Further, these witnesses testified that there would be no use for a parts list such as that contracted for by appellant. The testimony also revealed that, at the time of the settlement agreement, there was no such thing as a parts manual in existence which related to this machine. After the date had passed for furnishing the parts list, appellees furnished appellant a self-compiled package showing some of the parts and the numbers applicable to them. Appellees continued to furnish such information up to within 3 weeks of the date of trial. The parties disagree as to whether the materials furnished to appellant by appellees can be denominated a parts list. However, regardless of whether that information later furnished to appellant can be classified as a parts list or not, a finding that it was furnished within 60 days of the installation of the second machine as appellees agreed to do, and as required by the settlement agreement, is so against the great weight and preponderance of the evidence as to be manifestly unjust. Again, this is a breach of contract action. We think that it is immaterial, in this lawsuit, whether other machines worked well or whether a parts list was useful to other users because, here, appellant contracted for the parts list to be delivered within a certain time.

■ If a party has committed a material breach of a contract, his performance cannot be substantial. *Measday v. Kwik–Kopy Corporation,* 713 F.2d 118 (5th Cir. 1983). The provisions regarding the warranty and the parts manual were material terms; they were not "technical or unimportant" details. See *Balcones Corporation v. Sutherland,* supra. Appellant's challenge to the finding that appellees had substantially performed the agreement is sustained.

■ In his second point of error, appellant argues that the trial court's finding that appellees did not breach the settlement agreement was so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant had the burden of proof to show that appellees breached the settlement agreement; thus, appellant challenges the trial court's non-finding of a breach. In reviewing this point, as framed by appellant, we examine all of the evidence to determine whether the adverse finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* supra; *Broach v. Bradley,* 800 S.W.2d 677 (Tex.App.-Eastland 1990, writ den'd); see also *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Company,* 766 S.W.2d 264, 275–76 (Tex.App.-Amarillo 1988, writ den'd); *Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L. REV. 361 (1960). This court cannot find facts which would be the basis for a rendition, we may only "unfind" certain facts and remand for a new trial. *Pool v. Ford Motor Company,* supra at 634.

We have discussed the evidence with regard to each term of the settlement agreement in connection with our discus-

sion of substantial performance. We need not rehash that discussion. After a review of such evidence, in accordance with the above standards of review, we sustain appellant's second point of error.

In his third point of error, appellant asserts that:

> The trial court's failure to find that [appellees] fraudulently induced [appellant] to enter into the settlement agreement was so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Appellant is again attacking a finding upon which he had the burden of proof. His attack requires that he demonstrate that the adverse finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Broach v. Bradley,* supra; see also *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Company,* supra; *Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,* supra. We must examine all of the evidence and set aside a finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* supra. Again, we review the trial court's findings of fact following a bench trial using the same standards we use to review the factual sufficiency of the evidence supporting a jury's verdict. *Hitzelberger v. Samedan Oil Corporation,* supra.

■ One who claims fraudulent inducement must prove: (1) that a material representation was made; (2) that the representation was false; (3) that, when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that the speaker made the representation with the intent that the other party should act upon it; (5) that the party acted in reliance on the representation; and (6) that the party thereby suffered injury. *Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998).

■ Appellant argues that the facts of this case are such that they circumstantially demonstrate that appellees made representations which were false and which they knew to be false or which were made recklessly without any knowledge of the truth. Appellant argues that we can infer from the fact that certain things were not performed in accordance with the agreement that appellees never intended to perform them. We are reminded that, in issues such as this, we are not to substitute our findings for those of the trial court just because we might think that there should be a different result. *Pool v. Ford Motor Company,* supra. The trial court heard testimony on both sides of this issue, including appellant's testimony that he did not think appellees "lied" to him when they promised the parts manual. The trial court was the fact finder; and, in the face of conflicting evidence on a great weight point, deference will be given to the fact finder. After a review of all of the evidence, we cannot say that the trial court's finding on the issue was so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed in connection with the fraud in the inducement claim. In all other respects, the judgment of the trial court is reversed, and the cause is remanded for a new trial.